UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROFESSIONAL'S CHOICE SPORTS MEDICINE PRODUCTS, INC.<br><br>Plaintiff,<br><br>v.<br><br>EUROW & O'REILLY CORPORATION d/b/a EQUINE COMFORT PRODUCTS,<br><br>Defendant. | Case No.: 13cv1484 AJB (KSC)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br>[Doc. No. 14] |

This matter comes before the Court on Defendant Eurow & O'Reilly Corporation d/b/a Equine Comfort Products' ("Defendant") Motion to Dismiss the First Amended Complaint ("FAC"). Plaintiff brought this action for declaratory judgment, trademark cancellation, trademark infringement under 15 U.S.C. § 1125(a)(2), and for unfair competition under California Business and Professions Code § 17200 *et seq.* (Doc. No. 13.) Defendant filed the Motion to Dismiss on December 30, 2013. (Doc. No. 14.) Plaintiff responded on January 23, 2014. (Doc. No. 16.) The Court finds the matter appropriate for determination on the briefs without oral arguments pursuant to Civil Local Rule 7.1.d.1. The hearing on the Motion, currently scheduled for February 20, 2014 is hereby VACATED. For the follow reasons, the Motion to Dismiss is DENIED.

## I.   BACKGROUND [1]

This trademark action arises under the Lanham Act, 15 U.S.C. § 1051, seq.  Plaintiff is, and has been for over 25 years, a purveyor of specialty equine products. (Doc. No. 13 at 3.)  Plaintiff states that it has used the AIR RIDE mark in conjunction with the sale of equine saddle pads continuously since at least 1999. (*Id.*)  Plaintiff has attempted, on numerous occasions, to protect its marks by filing trademark applications with the United States Patent and Trademark Office ("USPTO"): (1) in 1999 the '620 Application for AIR RIDE SUSPENSION SYSTEM; (2) in 2003 the '777 Application for AIR RIDE; and (3) also in 2003 the '639 Application for SMX AIR RIDE (collectively the "Air Ride trademarks/marks"). (*Id.* at 4-5.)  The '620 Application did not proceed to registration and was abandoned in 2000. The USPTO refused registration for the '777 and '639 Application due to a likelihood of confusion with a prior registration for AIRRIDE with Registration Number 2,412,023 (the "023 Registration") (registered to EQ, Inc. for hoof packing for horses). (*Id.* at 5.)  Plaintiff attempted to overcome the office action rejecting the '777 and '639 Application, but was unsuccessful and thereafter also abandoned those Applications. On September 15, 2007, the '023 Registration was cancelled by the USPTO due to the owner's failure to file a continued statement of use under Section 8 of the Act. (*Id.*)

Defendant is "one of the nation's leading wholesalers of top quality products in its field." (*Id.* at 5.)  Defendant manufactures products ranging from jewelry to automotive detailing products. (*Id.*)  Equine Comfort Products ("ECP"), a manufacturer of equine products, was initially established around 2003 by Donna O'Reilly, one of Defendant's executives,  and third party cofounder Martine Fennelly.  In 2005, Fennelly parted ways with O'Reilly and since that time, ECP has been operated as a division within Defendant's overall textile business. (*Id.* at 6-7.)  According to Plaintiff, Fennelly was ECP's product designer and O'Reilly handled the manufacturing aspects of ECP.   On May 13, 2011 Defendant caused to be filed with the USPTO a trademark applications for the Air Ride marks: (1) Air Ride (registration no. 4,074,157), (2) ECP Air Ride (registration no.

---

[1] The following factual allegations are taken from Plaintiff's FAC.

4,083,086), and (3) Air Ride by ECP (registration no. 4,207,097). Each matured to registration. (*Id.* at 8.)

Plaintiff alleges that Defendant procured these trademark registrations despite knowledge of Plaintiff's superior rights to the AIR RIDE mark "in efforts to build a facade of legitimacy around its bad-faith adoption of" the same mark. (*Id.* at 7.) Plaintiff alleges that Fennelly and Plaintiff's own executives were "longstanding professional acquaintances," and that Fennelly had actual knowledge of Plaintiff, its products and its rights in various trademarks by virtue of Plaintiff's presence and reputation in the equine industry. (*Id.* at 6.) Plaintiff alleges that Defendant has continuously copied competitors' products and manufactures lower-quality copies overseas. (*Id.* at 6-7) Plaintiff further alleges that Defendant "employed the foregoing strategy in copying Plaintiff's products by intentionally adopting a series of products bearing similar names."[2] (*Id.* at 7.) Moreover, Plaintiff alleges that both Plaintiff's AIR RIDE saddle pads and Defendant's Air Ride saddle pads have appeared in Dover Saddlery, a catalog of a mutual distributor, but that Plaintiff's appeared first. (*Id.*) Defendant's review of Dover Saddlery revealed the existence of Plaintiff's AIR RIDE saddle prior to their submission of the Air Ride trademark applications.

Plaintiff received a cease and desist letter from Defendant's counsel on March 25, 2013, demanding Plaintiff discontinue the use of AIR RIDE in connection with equine products. (*Id.* at 9) The parties engaged in communications and discussion for a potential settlement. However, discussions were unfruitful and Plaintiff, fearing a potential lawsuit for trademark infringement, brought this action for declaratory relief. Plaintiff asserts itself as the senior user and seeks to cancel Defendant's Air Ride trademarks.

Plaintiff's FAC asserts five causes of action: (1) declaratory judgment; (2) cancellation of the "Air Ride" trademarks based on fraud on the USPTO under 15 U.S.C. § 1064; (3) civil liability for false or fraudulent registration under 15 U.S.C. § 1120; (4) trademark infringement under 15 U.S.C. § 1125(a)(1); and (5) unfair competition under

---

[2] Plaintiff cites two examples: Defendant's "Comfort Fleece" and Plaintiff's "COMFORT-FIT" as well as Defendant's "Grip Tech" and Plaintiff's VENTECH. (Doc. No. 13 at 7.)

California Business and Professional Code 17200, *et seq*. ("UCL"). Defendant seeks dismissal of the Second, Third, and Fifth causes of action on the basis that the FAC "did not aver 'clearly established trademark' rights sufficient to transform defendant's non-disclosure into a fraudulent trademark application." (Doc. No. 14 at 1.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the plaintiff is entitled to relief . . . [to] give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations and parentheticals omitted). In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.2007).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *see Leatherman v. Tarrant Cty. Narcotics Intelligence Unit,* 507 U.S. 163, 168, (1993). "Rule

9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.' [Citations omitted.]" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## III.  DISCUSSION

Defendant's Motion seeks dismissal of the FAC's second, third, and fifth causes of action on the basis that Plaintiff (1) has not established trademark rights sufficient to transform Defendant's non-disclosure into a fraudulent trademark application and (2) has not alleged plausible grounds for scienter, an essential element in the three causes of action.[3] (Doc. No. 14 at 1.) Plaintiff filed a Response in opposition on January 23, 2014. (Doc. No. 16.) Defendant filed a Reply in support on February 6, 2014. (Doc. No. 17.)

### A.  Second Cause of Action: Cancellation Based on Fraudulent Representation

A trademark can be cancelled under 15 U.S.C. § 1064(3) if, among other things, its "registration was obtained fraudulently." To seek cancellation, a plaintiff must prove (1) a false representation; (2) regarding a material fact; (3) the registrant's knowledge or belief

---

[3] Defendant requests that this Court take judicial notice of several documents in support of their motion to dismiss. "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 668 (9th Cir. 2001) (internal citation omitted). A court may, however, properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but attached, if their authenticity is not questioned. *Id.* Additionally, a court may consider matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence. *Id.*; *see also MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). The court is "not required to accept as true conclusory allegations which are contradicted by document referred to in the complaint." *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

In considering the motion, the Court did not require use of these documents as their content was properly alleged in the FAC and was uncontradicted by any party nor the documents themselves.

that the representation is false, (4) the intent to induce reliance upon the misrepresentation; (4) reasonable reliance thereon; and (6) damages proximately resulting from the reliance. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). A plaintiff bears a "heavy" burden to prove fraud. *Id.* at 1439.

Plaintiff alleges that Defendant made a fraudulent representation to the USPTO when Defendant verified its ownership and entitlement to use the Air Ride marks despite having knowledge of Plaintiff's AIR RIDE saddle pads and Plaintiff's superior rights in the AIR RIDE mark. (Doc. No. 13 at 10-12.) Specifically, Plaintiff alleges Defendant represented to the USPTO that "no one else . . . has the right to use the mark in commerce . . ." (*Id.* at 12.) Defendant argues that mere knowledge of another's use of a mark is insufficient to constitute fraud and there has never been a case cancelling a registrant's mark on the grounds that the registrant knew of or should have known of the plaintiff's use of an unregistered mark. (Doc. No. 14 at 8.) Furthermore, Defendant argues Plaintiff has failed to allege "clearly established rights" to the marks. (Doc. No. 14 at 8-9.) Defendant's primary argument is that because Plaintiff's trademark was not established by either (1) court decree, (2) settlement agreement; or (3) trademark registration, Plaintiff cannot claim any rights to the AIR RIDE mark sufficient to defeat Defendant's registration. (*Id.* at 9.)

A claim of fraud in a trademark application oath requires proof of four elements. *See Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1234 (2007) (citing *Intellimedia Sports Inc. v. Intellimedia Corp.*, 43 U.S.P.Q. 2d 1203, 1206 (Trademark Tr. & App. Bd. 1997).

> [A] plaintiff claiming that the declaration or oath in the defendant's application for registration was executed fraudulently, in that there was another use of the same or a confusingly similar mark at the time the oath was signed *must allege particular facts* which, if proven would establish that: (1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to the applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and that (4) applicant, in failing to disclose these facts to the Patent and Trademark office, intended to procure a registration to which it was not entitled.

*Id.* (emphasis in original).

//

1. <u>Plaintiff is Not Required to Show "Clearly Established Rights"</u>

Defendant cites to *eCash Technologies, Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1150 (C.D. Cal. 2001), to stand for the proposition that Plaintiff is unable to establish any trademark rights whatsoever, simply because Plaintiff's rights were not clearly established by court decree, settlement, or a competing registration. The Court does not find *eCash* to inform the case at bar. *eCash* involved two parties, each registrants of domain names that were substantially alike. *Id.* at 1145. The defendant registered the domain name "ecash.com" in July 1995. Subsequently, the plaintiff registered "eCash" as its own domain name and registered the *mark* "eCash". The plaintiff initiated an action against defendant alleging trademark infringement and the defendant filed a counterclaim seeking to cancel the plaintiff's "eCash" mark based on fraud. *Id.* at 1148-49. The district court dismissed defendant's claim on the basis that the defendant failed to show its "clearly established rights" in the "Ecash" mark *Id.* at 1151. The court noted that mere registration of a domain name does not convey trademark rights in the same name as the domain name. *Id.* at 1150. *eCash* in turn relies on the Seventh Circuit case of *Rosso and Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1266 (7th Cir. 1983), for the proposition that clearly established rights are those conferred by a "court decree, by the terms of a settlement agreement, or by a registration." However, a reading of the Seventh Circuit's opinion reveals that these are merely three examples by which a *junior user* can show clearly established rights. *Id.*

Thus, while there is no general duty to investigate and report all other possible users of an identical or confusingly similar mark, a senior user's failure to acknowledge the conflicting and clearly established rights of a *junior user* may constitute fraud. *Id.* ("[I]n some instances a senior user would be making a false oath where he fails to acknowledge conflicting rights of a junior user which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration."). Defendant's contention is thus, misleading. In the instant case, the Court is not faced with a junior user seeking cancellation of a senior user's mark based on fraud. If this were the case, then the Court would have to agree with Defendant and find that Plaintiff has not shown "clearly

established rights." However, Plaintiff's FAC alleges a "superior right" to the AIR RIDE mark in relation to Defendant.

Accordingly, a trademark applicant needs to disclose to the USPTO those users it knows to have superior *or* clearly established rights in the proposed mark. Defendant's trademark application oath may still constitute a fraud on the USPTO if: (1) Plaintiff used the AIR RIDE mark at the time the oath was signed; (2) Plaintiff's had legal rights superior to the mark over Defendant's; (3) Defendant knew of Plaintiff's superior rights; and (4) Defendant intended to procure a registration to which it is not entitled to. *See Hana*, 500 F. Supp. 2d at 1234. The Court now turns to whether Plaintiff has sufficiently stated a claim, under Rule 9(b)'s requirements, for fraud based on the elements stated above.

2. <u>The FAC Adequately Alleges that Plaintiff had Rights Superior to Defendant</u>

The trademark application oath requires the applicant to verify he "believes himself . . . to be the *owner* of the mark sought to be registered." 15 U.S.C. § 1051(a) (emphasis added). This leads to the distinction that one must disclose any knowledge of another's *rights* in the mark, not just mere use of the mark. Thus Defendant may have had the duty to disclose if Plaintiff's superior rights, i.e. ownership of the mark, were known to Defendant at the time of its application.

In the instant case, Defendant enjoys the statutory presumption of ownership and exclusive right to use the Air Ride marks. *See* 15 U.S.C. §§ 1057(b), 1115(a). However, Plaintiff may rebut the presumption and demonstrate the superiority of its common law rights and ownership based on continuous prior use in commerce. *See Sengoku Works*, 96 F.3d 1217, 1218 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."); *see also Blue Bell, Inc. v. Farah Manufacturing Co., Inc.*, 508 F.2d 1260, 1265 (5th Cir. 1975) ("The exclusive rights to a trademark belongs to one who first uses it in connection with specified goods.")

The Court reiterates that on a motion to dismiss, the Court must accept as true, all of Plaintiff's factual allegations and draw all reasonable inferences in favor of Plaintiff. Plaintiff claims that since 1999, it has used the AIR RIDE mark in conjunction with the sale of equine saddle pads. (Doc. No. 13 at 3.) In support, Plaintiff has provided with the Court

with nine examples of advertisements for Plaintiff's AIR RIDE branded pads with dates ranging from 1999 to 2013. (*See* Doc. No. 13 at Exs. 1-9.) Plaintiff also claims that since 1999, it has realized international sales of its AIR RIDE saddles ranging from 3,500 to 6,000 units per year, with yearly domestic sales revenue from the AIR RIDE saddles between an estimated $1,000,000.00 to $2,500,000.00. (*Id.* at 4.) Moreover, Plaintiff alleges to have promoted the AIR RIDE saddle in equine media outlets, spent between $100,000 and $300,000 on overall yearly advertising nationwide, and its saddles have appeared in the catalogues of some of the equine industries largest distributors and retailers. (*Id.* at 4.) As alleged, Plaintiff has shown "continuous use" prior to the 2011 and 2012 registration dates of Defendant's Air Ride marks. *See Casual Corner Associates, Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709, 712 (9th Cir. 1974) (noting "continuous use" is not the same as a lack of abandonment, rather it is use without significant interruption, such as non-use for one year).

Defendant puts forth an interesting argument that third party EQ Inc.'s then existing federal '023 Registration prevented Plaintiff from establishing any trademark rights, even rights as to Defendant.[4] (Doc. No. 14 at 4, n.4.) Moreover, Defendant argues that Plaintiff is litigating over an alleged act Plaintiff itself is guilty of, failure to disclose another's superior rights in a trademark application.[5] (*Id.*) Plaintiff counters that the '023 Registration did not affect the accrual of its rights in AIR RIDE. Additionally, to determine whether the '023 Registration barred Plaintiff's acquisition of rights would force the Court to make the fact intensive inquiry of whether Plaintiff's AIR RIDE saddles infringed the '023 Registration. (Doc. No. 16 at 6-7.) The Court does not need to engage in such a convoluted analysis to reject Defendant's contention.

---

[4] Defendant states that the FAC's allegations cannot create common law rights adverse to an existing federal registration. Defendant then directs the Court to footnote 4 in which they argue even if Plaintiff can qualify as a senior user, EQ Inc.'s federal registration would have frozen the scope of a prior users claim. (Doc. No. 4 at 4) (citing *Wine Group, LLC v. L& R. Wine Co.*, 2012 U.S. Dist. LEXIS 128576). .

[5] Defendant appears to imply that Plaintiff is guilty of "unclean hands." However, as Defendant fails to assert that Plaintiff's claims are barred by the doctrine of unclean hands, the Court will not address the applicability of the doctrine to the case at bar.

Essentially, Defendant attempts to assert a *jus tertii* defense, i.e., when a defendant raises the right of a third party. 6 McCarthy on Trademarks § 31:157 ("In a trademark infringement suit, a claim by defendant that a third party has rights in the mark superior to plaintiff is in effect, a *jus tertii* defense . . . *jus tertii* in the trademark context arises when defendant alleges that plaintiff has no 'title' because plaintiff itself is an infringer of a third party with rights allegedly superior to plaintiff."); *see also Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2d 1150, 1166 (W.D. Wa. 2010).

Defendant's argument fails. Modern courts and the Trademark board have rejected the *just tertii* defense. *Lahoti*, 708 F. Supp. 2d at 1166; *see also Comm. For Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996) ("[A] third party's prior use of a trademark is not a defense in an infringement action."). The *jus tertii* defense is disfavored as it asks a court to resolve the rights of a third party not present in the current litigation. Courts should not adjudicate the rights of a party who, for one reason or another, chose not to assert them. Moreover, the instant case involves trademark rights with respect to the two litigating parties, therefore, whether Plaintiff's rights are "superior to the world is irrelevant." McCarthy on Trademark, § 31:158 (analogizing the law of property and trademark). As alleged, Plaintiffs have sufficiently alleged superior rights in the AIR RIDE mark based on its prior continuous use of the mark in commerce.

3. <u>Knowledge of Falsity and Scienter</u>

"Because the trademark application oath is phrased in terms of a subjective belief, it is extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief that it is the senior right holder. *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d. 1228, 1235 (C.D. Cal. 2007) (internal quotations and citations omitted.) Moreover, Rule 9(b) requires more than conclusory allegations that the defendant "knew" about a plaintiff's superior rights. However, the requirement for pleading scienter is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud" because "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference

of scienter could be drawn." *Cooper v. Pickett*, 137 F.3d 616, 628 (9th Cir.1997) (quoting GlenFed, 42 F.3d at 1546).

With regards to a fraudulent statement in a trademark application, the plaintiff must plead particular facts which, if proven, would establish that, as of the application filing date, the defendant believed that the plaintiff had superior or clearly established rights and that a likelihood of confusion would result from the applicant's use of its marks. Alternatively, the plaintiff must plead particular facts (e.g., substantial identity between the parties' marks and goods or services . . .), which if proven, would establish that, at the time the application was filed, defendant had no reasonable basis for its averred belief that no other person had the right to use the same or a confusingly similar mark on or in connection with the goods or services identified in the application. *Intellimedia Sports Inc., v. Intellimedia Corp.*, 43 U.S.P.Q. 2d 1203, 1997 WL 398344, *4 (Trademark Tr. and App. Bd., 1997).

Plaintiff makes five factual allegations by which they attempt to show Defendant's knowledge of Plaintiff's superior rights to the AIR RIDE mark: (1) Defendant's trademark clearance search which revealed Plaintiff's attempts to procure federal registration; (2) the competitor relationship between the two parties in a field where Plaintiff has enjoyed "decades of commercial success;" (3) Defendant's knowledge of Plaintiff and its marks by a co-founder's understanding of the same; (4) Defendant's adoption of other product names imitating Plaintiff's; and (5) the two parties products appearing in a common distributor's catalogue. (Doc. No. 13 at 10-13; Doc. No. 16 at 9.)

Fraud, by its nature is difficult to detect and to state with certainty. Thus, courts only require plaintiffs to allege facts that give strong inference of fraudulent intent. Rule 9(b) requires that the circumstances constituting fraud be stated with particularity, but "does not require nor make legitimate the pleading of detailed evidentiary matter." *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973) (quoting 2A J. Moore, Federal Practice ¶ 9.03, at 1930 (2d ed. 1972)). "Nor does Rule 9(b) require any particularity in connection with an averment of intent, knowledge or condition of the mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* (citing *Trussell v. United Underwriters, Ltd.*, 228

F. Supp. 757, 774 (D. Colo. 1964) and *Gottlieb v. Sandia American Corp.*, 35 F.R.D. 223, 224 (E.D. Pa. 1964)). As the FAC stands now, Plaintiff has met this burden. Plaintiff has alleged sufficient facts, that if proven true, would establish that at the time Defendants filed the trademark application, Defendants knew of Plaintiff's superior rights and a likelihood of confusion would result.

Defendant makes several objections to the FAC, however each fails to show how the FAC has not met Plaintiff's burden of pleading. First, Defendant argues that imputed knowledge of a corporate officer "cannot supply the missing scienter," and is legally insufficient. (Doc. No. 14 at 11.) The FAC alleges that ECP was founded by Donna O'Reilly and Martine Fennelly ("Martine").[6] (Doc. No. 13 at 6.) However, according to Defendants, Martine was terminated six years prior to the Defendant's trademark application. Therefore, even if imputed knowledge was legally sufficient to establish scienter, Plaintiff's allegations still fail as the principal cannot be charged with an agent's knowledge after her departure from the company. (Doc. No. 14 at 11-12.)

As stated above, the FAC pleads that ECP was founded in 2003 by Martine and O'Reilly. (Doc. No. 13 at 6.) Martine had longstanding professional relationships with Plaintiff's own executives and was herself knowledgeable of the equine industry as well as Plaintiff's reputation and products. (*Id.*) Generally, under California law, "the knowledge of a corporate officer within the scope of his employment is the knowledge of the corporation." *Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 54 Cal. Rptr. 786, 800–01 (1966) (citation omitted). As alleged, the FAC contains enough facts to infer that since its founding, ECP had actual knowledge of Plaintiff's products and use of the mark AIR RIDE by virtue of a corporate officer. What Defendant asks this Court to do is inappropriate on a motion to dismiss. (*See* Def. Rep. Doc. No. 17 at 2-3.) Defendant wants this Court to declare that Martine was not a co-founder, did not have personal knowledge of Plaintiff's AIR RIDE mark, and that Plaintiff has merely concluded that Defendant knew of their rights. (*Id.*) Such declarations may be appropriate to seek upon a motion for

---

[6] Plaintiff's FAC refers to Martine Fennelly while Defendant's Response refers to the same individual as "Ms. Martine." For consistency sake, the Court will refer to this individual as "Martine."

summary judgment after the close of discovery, but the Court may not do so upon a motion to dismiss.

Second, Defendant contends that conclusory averments of copying do not supply the missing scienter. (Doc. No. 13.) While the Court agrees that Plaintiff's allegations of a general scheme of copying is tenuous at best to establish knowledge, the Court does not focus only on one factual allegation in isolation. Instead, when looking at the FAC as a whole, Plaintiff has shown the "who, what, when, where, and how." Plaintiffs have stated with particularity the circumstances that constitute the misconduct alleged which allows this Court to draw an inference of scienter i.e., fraudulent intent. Whether Plaintiff may be able to produce evidence to supports its theory and prove its allegation is another matter, appropriately addressed after discovery.

Currently, a review of the FAC shows that Plaintiff's have established enough factual allegations to provide Defendant with notice of the conduct charged and to prepare an answer and/or defense. Moreover, as stated above, conditions of the mind may be averred generally so long as the factual circumstances are stated with particularity. Plaintiff has done so. The Court thus DENIES Defendant's motion to dismiss the second cause of action for fraud on the USPTO.

## B.     Third Cause of Action: Civil Liability for False Registration

Section 38 of the Lanham Act provides that:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120.

To establish a civil claim for fraudulent procurement, a plaintiff must prove: "(1) a false representation regarding a material fact; (2) knowledge or belief that the representation is false ('scienter'); (3) an intention to induce the listener to act or refrain from acting in reliance on the misrepresentation; (4) reliance on the misrepresentation ('reasonable reliance'); and (5) damage proximately resulting from such reliance." *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp.2d 1138, 1149 (C.D. Cal. 2001) (citations omitted).

Plaintiff contends that as a result of Defendant's fraudulent registration of their Air Ride marks, "[Defendant] has unfairly gained market share from Plaintiff because consumers wrongfully believed they were purchasing Plaintiff's genuine AIR RIDE saddle pads." (Doc. No. 13 at 14.) Moreover, Plaintiff's sales growth suffered as a result of Defendant's alleged fraudulent conduct. (*Id.*) Defendant moves to dismiss based on many of the same arguments. Specifically, as this cause of action is derivative and dependent upon the validity of Plaintiff's second cause of action for fraud on the USPTO, dismissal is warranted. The Court has denied Defendant's motion to dismiss the second cause of action, therefore this first basis is moot. However, Defendant further argues that the civil liability cause of action must be dismissed as "damages recoverable under § 1120 must flow from registration of the mark, not from its use or enforcement." (*Id.*) Citing to *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985 (8th Cir. 1993), Defendant argues Plaintiff "does not have standing to bring an action under § 1120 where, as here, the asserted damages flow from the use or enforcement of the mark rather than its registration." Defendant's reliance on *Gilber/Robinson* is misplaced as its conclusion is inapplicable to the case at bar.

A person suing for civil liability must show that the damage claimed was proximately caused by assertion or use of the fraudulently procured registration, as the language of the statute states a person shall be liable for damages "sustained in consequence of" the fraud on the USPTO. 15 U.S.C. § 1120. *Gilbert/Robinson* involved an injury to the *infringer* resulting from being enjoined as the infringer. In *Gilbert/Robinson*, the trademark owner, Gilbert, had already acquired trademark rights to the mark "HOULIHAN'S" through thirteen years of use of the mark in commerce.[7] Gilbert initiated an action against defendant Carrie, after Carrie started operating a bar, "MIKE HOULIHAN'S." As a counterclaim, Carrie alleged that Gilbert obtained their federal registration by fraud. *Id.* at 988-89. The Eighth

---

[7] Gilbert opened the first HOULIHAN'S restaurant in 1972, applied for its first federal registration in 1975, acquired registration in 1976. Gilbert expanded the HOULIHAN'S franchise and acquired a second federal registration of HOULIHAN'S OLD PLACE AND LOGO. *Gilbert/Robinson*, 989 F.2d at 987-88. In 1985, Carrie opened a MIKE HOULIHAN'S in close proximity to a Gilbert restaurant.

Circuit found no causation stating that defendant's damage was not caused by any fraud on the USPTO, because that injury would have been sustained whether there was a federal registration or not. *Id.* at 991. "Thus even without its registrations, [the trademark owner] would have had a substantially similar Lanham Act [§ 43(a)] cause of action and an identical state law claim for infringement and unfair competition." *Id.* at 991. There was no question that Gilbert had superior rights, acquired through thirteen years of use prior to defendant's use of the same name. Thus, any alleged fraud did not cause defendant's injury, as the plaintiff owned a valid mark. *Id.* ("No case has allowed an infringer to recover as [Lanham Act § 38 damages, losses attributable to the trademark owner's enforcement of a valid mark because the owner *enhanced its rights* by fraudulently procured registration.")

It is obvious that the factual allegations in the instant case distinguish it from *Gilbert/Robinson*, thus making the Eighth Circuit conclusion inapplicable. We are not dealing with a party, already with a superior right, who then tried to "enhance" that right by fraudulent registration. Instead, Plaintiff alleges damages, in terms of lost market share, sales decline, and damage to reputation, caused by the assertion or use of the fraudulently procured registration. *See* McCarthy on Trademarks, § 31:86. Accordingly, the Court DENIES the motion to dismiss the third cause of action.

**C.     Fifth Cause of Action: Violation of California's Unfair Competition Law ("UCL")**

California Business and Professions Code § 17200 prohibits unfair competition, defined to include any "unlawful, unfair or fraudulent business act or practice that is unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200. The UCL is "written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are unlawful, unfair, or fraudulent. An act can be alleged to violate any or all of the three prongs of the UCL - unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgm't, Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). The scope of California's UCL is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993).

Plaintiff alleges that Defendant's intentional acts of trademark infringement and fraud on the USPTO constitutes "unlawful, deceptive, and/or unfair business acts and/or practices" under California's UCL. (Doc. No. 13 at 15.)  Defendant's only basis for dismissal is the argument that the UCL claim is derivative and dependent of the second cause of action.  The Court has already denied the motion to dismiss the second cause of action, accordingly the Court also DENIES the motion to dismiss the fifth cause of action.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Second, Third, and Fifth Causes of Action in the First Amended Complaint is DENIED.

IT IS SO ORDERED.

DATED: February 10, 2014

Hon. Anthony J. Battaglia
U.S. District Judge